**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESICA ISABEL BARRAGAN-AYALA,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, WARDEN OF ADELANTO ICE PROCESSING CENTER, ET AL.,<br><br>Respondents. | Case No. 5:26-cv-02429-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On May 7, 2026, Petitioner Jesica Isabel Barragan-Ayala ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (the "Petition"), challenging her detention in immigration custody. (Dkt. 1 at 2.) On May 14, 2026, Respondents Fereti Semaia, Warden of the Adelanto ICE Processing Center, Ernesto Santacruz, Jr., Los Angeles Field Office Director of Immigration and Customs Enforcement ("ICE"), Todd M. Lyons, Acting Director of ICE,

Markwayne Mullin, Secretary of U.S. Department of Homeland Security ("DHS"), and Todd Blanche, Acting U.S. Attorney General (collectively, "Respondents") filed an Answer to the Petition stating that "[t]he Respondents are not presenting an opposition argument at this time." (Dkt. 9 at 2.)  The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 4, 7.)  **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on his prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified.  (Dkt. 1 at 33.)  Respondents had the opportunity to dispute the facts alleged in the Petition or to provide additional facts, but declined to do so.  (Dkt. 9.)  Indeed, "Respondents are not presenting an opposition argument at this time."  (Id. at 2.)  Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition.  See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a Colombian citizen who initially came into immigration custody shortly after crossing the border at or near Eagle Pass, Texas on February 2, 2023. (Dkt. 1 at 14.)  Petitioner was processed by Border Patrol and held for over a month in a cold detention center where she slept on the floor with just an aluminum blanket and got the flue from the cold temperatures.  (Id.)  Petitioner passed a credible fear interview and then was released in mid-March of 2023 under conditional humanitarian parole pursuant to Immigration and Nationality Act ("INA") § 212(d)(5).  (Id.)  ICE did not require Petitioner to post a bond.  (Id.)  Petitioner was

instructed to report for every ICE check-in and Immigration Court appointment and to not violate any U.S. law.  (Id.)

Petitioner was scheduled for her first ICE appointment in San Francisco on June 21, 2023.  (Id.)  Petitioner complied with all conditions of her release, attended all ICE appointments and Immigration Court hearings, and did not commit any crime.  (Id.)  Petitioner went to live with her friend in San Jose, California.  (Id.)  Petitioner found a job cleaning homes in the Bay Area.  (Id.)  Petitioner was frequently praised by her boss for her impressive work and was given greater responsibility.  (Id.)  Petitioner became an active member of the San Jose community.  (Id.)  Petitioner was in several WhatsApp group chats with other community members and would help friends with household tasks.  (Id.)  As a practicing Christian, Petitioner attended church in Milpitas, adjacent to San Jose.  (Id.)  In her free time, Petitioner would help out her family by taking them to doctors' appointments and running errands.  (Id.)  Petitioner also has cousins in North Caroline and an aunt and cousins who are U.S. citizens in New Jersey.  (Id.)

Petitioner later moved to Riverside, California, in September of 2025, where she has friends.  (Id.)  Petitioner promptly changed her address with ICE and the Immigration Court.  (Id. at 14-15.)  Petitioner lived in an apartment by herself in Riverside until she was taken into custody by immigration authorities.  (Id. at 15.)  While in Riverside, California, Petitioner prepared her asylum application based on political persecution she faced in Colombia from the guerilla for being a political leader.  (Id.)  Petitioner filed her asylum application within the statutory deadline and is eager to have her asylum claim argued in Immigration Court.  (Id.)

Petitioner's community ties to the Riverside area are deep and demonstrable.  (Id.)  Petitioner continued to practice Christianity at River Arena, a church located in Anaheim, attending service a few times per month.  (Id.)  Petitioner worked as a food delivery driver from 9 a.m. until midnight nearly every day, a job she plans to resume after her detention.  (Id.)  Petitioner has a large community of friends who

she would help out in her free time by assisting with household tasks or lending money.  (Id.)  Petitioner also has a boyfriend of two years living in Riverside and considers him family.  (Id.)  Petitioner also created close community ties with the Walmart employees in Riverside because she was frequently there to pick up deliveries for work.  (Id.)  Petitioner paid her taxes every year.  (Id.)  Petitioner also has a nine-year-old daughter and a sixty-two-year-old mother in Colombia who financially depend on her and who have been suffering without Petitioner's financial support.  (Id.)

In June of 2025, at an ICE appointment, Petitioner was told to start uploading photos to ICE every month.  (Id. at 16.)  Petitioner never missed a photo upload.  (Id.)  In late December of 2025, at her first ICE check-in in San Bernardino, ICE placed an ankle monitor on Petitioner because they said she had taken one of the pictures away from her address, when in fact she took it right outside her front door because she was on the way to work.  (Id.)  Petitioner has no criminal history.  (Id.)

On the morning of April 17, 2026, in compliance with instructions from ICE, Petitioner presented herself for a scheduled check-in with ICE in San Bernardino. (Id.)  Petitioner arrived at the facility at approximately 9 a.m. and was attended around 11:30 a.m.  (Id.)  Petitioner was then brought to a room where immigration authorities took all her belongings, put her hands behind her back and put her in handcuffs.  (Id.)  Petitioner did not resist in any manner.  (Id.)  Petitioner immediately complied with the officers' commands and placed her hands behind her back to be handcuffed.  (Id.)  The agents explained that she was being detained because she had an ICE violation, but the agents refused to state what it was.  (Id.)

Petitioner was not transferred to a compliant detention facility.  (Id.)  Instead, she was placed in a cold room for 30 minutes with about five other people.  (Id.) Petitioner was then taken to another office where she was interviewed and asked if she had a Social Security number, a work permit, bank account, and real ID, and was asked if she paid taxes.  (Id.)  Petitioner answered yes to all of these questions.

4

(Id.)  An officer told Petitioner that she was being detained because she moved from San Jose without permission from ICE, when in fact her move was approved by ICE.  (Id.)  Petitioner was also told that she owed the Government five thousand dollars for having entered the country unlawfully.  (Id. at 16-17.)  After the interview, Petitioner was kept in another cold room by herself for an hour.  (Id. at 17.)  Petitioner was taken to Adelanto Detention Center a few hours later.  (Id.)  She was only given water and chips the whole day until she arrived at Adelanto and was given more food.  (Id.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief alleges violations of her procedural due process rights based on the lack of notice and a hearing prior to Petitioner's arrest. (Dkt. 1 at 30-31.)  Petitioner's second claim for relief alleges violations of her substantive due process rights based on her continued detention stemming from an arrest lacking prior notice and a hearing.  (Id. at 31-32.)  Petitioner seeks immediate release from custody as well as the return of her belongings that were taken when she was arrested.  (Id. at 32.)  Petitioner further seeks an order enjoining Respondents from onerous supervision requirements more than Petitioner had before her current detention.  (Id.)  Petitioner further seeks an order enjoining Respondents from re-detaining her unless and until a hearing can be held before a neutral adjudicator to determine whether her re-incarceration would be lawful because the Government has shown that she is a danger or a flight risk by clear and convincing evidence.  (Id. at 33.)  Finally, Petitioner seeks an award of reasonable costs and such further relief as the Court demes just and proper.  (Id.)

\\

\\

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

6

substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner entered the United States in February of 2023 and was released in mid-March of 2023 under conditional humanitarian parole.

7

(Dkt. 1 at 14.)  It is further undisputed that ICE did not require Petitioner to post a bond and that Petitioner complied with all conditions of her release.[1]  (Id.)  Thus, the Court concludes that once Petitioner was released from custody on parole,s he acquired "a protected liberty interest in remaining out of custody."  Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release."  Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the several years she spent out of custody building a life for herself in the United States.  See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Indeed, Petitioner lived in San Jose and Riverside, California, worked, paid taxes, had friends, and contributed to the community.  (Dkt. 1 at 14-15.)  Petitioner's undisputed ties to the community further strengthen her liberty interest in remaining out of custody.  See,

---

[1] The fact that Petitioner was released from custody necessarily means that she demonstrated to the satisfaction of immigration officials that her release would not pose a danger to property or persons and that she was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was detained without notice or a pre-deprivation hearing. (Dkt. 1 at 16.) Thus, the Court concludes that Petitioner's detention by ICE on April 17, 2026, without notice or a pre-deprivation hearing, violated her procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return h[er] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's prior release on parole before her current re-detention. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*,

9

while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

The Court notes that "Respondents are not presenting an opposition argument at this time."  (Dkt. 9 at 2.)  Therefore, Respondents have consented to the relief requested by Petitioner.  See C.D. Cal. L.R. 7-12.  Finally, the Court notes that

Petitioner also requested an award of reasonable attorney's fees and costs. (Dkt. 1 at 33.) The Court will consider an application under the Equal Access to Justice Act that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

\\

\\

\\

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner from custody on her prior conditions of parole (only those conditions that were in place prior to her arrest on April 17, 2026). Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall place a copy of the Judgment in

11

Petitioner's A-File.  Respondents shall file a notice of compliance within twenty-four hours of entry of Judgment.

IT IS SO ORDERED.

DATED:   May 15, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE